UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES HUDGINS, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No.: 3:21-CV-157-CEA-DCP |
| BERT BOYD, | ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Petitioner James Hudgins, a prisoner in the custody of the Tennessee Department of Correction, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his confinement under a Knox County judgment of conviction for first-degree murder, for which he received an effective sentence of life imprisonment. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court finds that no evidentiary hearing is warranted, and the petition should be denied.[1]

**I. SUMMARY OF RELEVANT EVIDENCE AND PROCEDURAL HISTORY**

Shortly before 11:00 p.m. on October 16, 2013, Petitioner shot Larry Turner (the "victim") five times at the home the victim shared with Laura Swaggerty at 321 Churchwell Avenue in Knox County, Tennessee [*See* Doc. 6-2 p. 110; Doc. 6-4 p. 36]. Fifteen years previously, Swaggerty had a daughter with Petitioner, but the couple's relationship ended shortly after the birth of the child

---

[1] An evidentiary hearing is only appropriate in a § 2254 action where review of the record demonstrates that a petitioner might be entitled to relief if given an opportunity to prove the factual allegations raised in the petition. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

[Doc. 6-3 p. 79; Doc. 6-4 p. 33; Doc. 6-5 p. 106]. Swaggerty and the victim began dating in 2011, and in October 2013, they lived in a home together with the victim's son and Petitioner's daughter [Doc. 6-4 p. 36]. At the time of the shooting, Petitioner's daughter viewed the victim as her second father [Doc. 6-3 p. 81]. Prior to the shooting, the victim and Petitioner had interacted peacefully for the entirety of the victim's relationship with Swaggerty [Doc. 6-3 p. 116; Doc. 6-4 p. 53].

On October 16, 2013, Petitioner's daughter walked approximately two blocks from her home to the home of her maternal grandmother [Doc. 6-3 p. 85-88; Doc. 6-4 p. 40]. While outside socializing with friends, the daughter spotted her father across the street, and she sent her mother a text advising her mom that Petitioner was across the street and drunk [Doc. 6-3 p. 90]. The daughter stated that she informed her mother of Petitioner's condition because he could "cause problems" when drunk [*Id.*]. Petitioner consumed six double vodkas around lunchtime on the day of the shooting and testified that he continued drinking at various points during the evening [Doc. 6-5 p. 107-09; Doc. 6-6 p. 86; Doc. 6-7 p. 43-44].

Swaggerty and the victim went to the maternal grandmother's house in response to the daughter's text [Doc. 6-3 p. 91]. Shortly after 8:00 p.m., Petitioner crossed the street to speak to his daughter, and when prohibited from doing so privately due to his intoxication, began "ranting and raving" until several of his friends pulled him away [Doc. 6-3 p. 95; Doc. 6-4 p. 44]. Before he was pulled away, however, Petitioner developed a belief that the victim had molested his daughter based on a look passed between his daughter and the victim [Doc. 6-6 p. 16]. Petitioner reiterated that belief to the victim and others throughout the evening [*See, e.g.*, Doc. 6-2 p. 53; Doc. 6-3 p. 110; Doc. 6-4 p. 16, 47; Doc. 6-5 p. 26-27; Doc. 6-6 p. 79-80].

Later, Petitioner's mother and Petitioner's sixteen-year-old son arrived at Petitioner's house, where the son saw Petitioner on the telephone and heard Petitioner threaten to kill the person to whom Petitioner was speaking [Doc. 6-2 p. 47-51]. Petitioner got in his mother's van and

2

demanded that she take him to his daughter's residence so that he could shoot the victim [*Id*. at 51, 53]. On the way, Petitioner's mother pulled over at a Kroger, went inside to use the restroom, and telephoned the police at approximately 9:00 p.m. [*Id*. at 53, 108-09]. As Petitioner and his son sat in the van, Knoxville Police Department officers responded to the Kroger parking lot and approached the vehicle [*Id*. at 55-56]. Petitioner reported the allegations of molestation, and the officers advised that they would check on Petitioner's daughter and turn the information over to juvenile investigators the following day [*Id.* at 56]. Eventually, Petitioner's mother took him home, and Petitioner's son agreed to spend the night at Petitioner's house [*Id*. at 58-59]. After his mother left, Petitioner and his son went inside Petitioner's house for a little while before Petitioner handed his son the keys to his Taurus and asked him to drive to the home of Petitioner's daughter [*Id*. at 61-62]. The son agreed, but no one was home when they arrived [*Id*. at 63].

Shortly thereafter, Petitioner attempted to call his daughter, but the victim answered the phone and refused to wake the sleeping child to speak to Petitioner [Doc. 6-2 p. 70; Doc. 6-4 p. 46]. Petitioner's son then drove Petitioner back to his daughter's house, where Petitioner approached the front porch armed with a Glock .40 caliber pistol [Doc. 6-2 p. 70; Doc. 6-6 p. 25]. Petitioner banged on the glass door and announced loudly that he wanted to speak with his daughter [Doc. 6-2 p. 71; Doc. 6-4 p. 47; Doc. 6-6 p. 27-28]. Petitioner and the victim began arguing, and during the argument, Petitioner accused the victim of molesting his daughter [Doc. 6-6 p. 28]. According to Petitioner, the victim then stated, "What if I am? . . . Prove it" [*Id*.] Petitioner then shot the victim [*Id*.]. Witnesses heard multiple gunshots [Doc. 6-2 p. 115-16; Doc. 6-3 p. 16-20]. Petitioner walked away while neighbors attended to the victim's wounds [Doc. 6-3 p. 16-17, 20].

Petitioner returned to his vehicle and indicated to his son that he wanted to leave [Doc. 6-2 p. 71-72]. The son drove away, and after a few stops, father and son went to the home of Petitioner's friends, the Graves [*Id*. at 78, 83]. They arrived around 1:00 a.m., and Petitioner told

3

the Graves that he "did something bad" and needed to speak with them [Doc. 6-2 p. 83; Doc. 6-5 p. 83-86]. Petitioner's son fell asleep and was later wakened by Petitioner, who informed his son that he intended to turn himself into law enforcement [Doc. 6-2 p. 96-98].

Chief deputy medical examiner Dr. Christopher Lockmuller concluded that the victim died from multiple gunshot wounds [Doc. 6-5 p. 68]. The victim was shot five times [*Id*. at 61-64]. One Winchester .380 casing and four .40 caliber casings were recovered from the crime scene [Doc. 6-3 p. 42-44, 71]. The same gun fired all of the .40 caliber casings [Doc. 6-4 p. 79].

A Knox County grand jury indicted Petitioner for first-degree murder and employing a firearm during a dangerous felony [Doc. 6-1 p. 5-6]. Following a jury trial, Petitioner was convicted of both counts. *State v. Hudgins*, No. E2015-01363-CCA-R3-CD, 2016 WL 4413281, at *8 (Tenn. Crim. App. Aug. 18, 2016), *perm. app. denied* (Tenn. Oct. 19, 2016) ("*Hudgins I*"). Petitioner was sentenced to life imprisonment. *Id*. On review of the motion for a new trial, the trial court vacated the conviction for employing a firearm during the course of a dangerous felony [Doc. 6-8 p. 37-38]. On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the first-degree murder conviction [Doc. 6-17], and the Tennessee Supreme Court denied Petitioner permission to appeal on January 15, 2015 [Doc. 6-20].

Petitioner filed a petition for post-conviction relief alleging ineffective assistance of trial counsel [Doc. 6-21 p. 4-6]. At an evidentiary hearing on the motion, Petitioner testified that he asked trial counsel to obtain receipts and Petitioner's bank records, but that trial counsel failed to do so even though Petitioner's bank records would confirm that he consumed alcohol at multiple restaurants in the hours leading up to the crime [Doc. 6-22 p. 26-29]. Petitioner claimed that he also was under the influence of painkillers at the time of the crime — three Opana pills and two hydrocodone pills per day [*Id*. at 28]. He additionally claimed that he learned after the trial that his mother had drugged him with Xanax the evening of the shooting [*Id*. at 29].

4

At the hearing, Petitioner also claimed that the State offered to let him plead to second-degree murder, but trial counsel stated "I'm not going to let you take that . . . I can get that at trial just based on your intoxication. . . We're going for manslaughter" [*Id*. at 32]. Petitioner stated he wanted to take the State's offer, but that trial counsel refused [*Id*.].

Petitioner asserted that trial counsel was impaired and "nodding out" during his trial. [*Id*. at 30]. However, trial counsel died shortly after Petitioner's trial and was unavailable to provide testimony either confirming or refuting any of Petitioner's assertions [*Id*. at 14]. After Petitioner finished testifying, he asked to address "other constitutional issues that need to be addressed," but the trial judge ordered him to step down from the witness box without any further testimony [*Id*. at 60].

The post-conviction court denied relief [*Id*. at 62-67]. The TCCA affirmed the post-conviction court's decision. *Hudgins v. State*, No. E2019-02173-CCA-R3-PC, 2020 WL 7589670, at *7-8 (Tenn. Crim. App. Dec. 22, 2020) ("*Hudgins II*"). The Tennessee Supreme Court denied Petitioner permission to appeal [Doc. 6-29].

On April 27, 2021, this Court received Petitioner's timely petition [Doc. 1], which raised the following claims, as paraphrased by the Court:

Ground 1: Whether trial counsel rendered ineffective assistance when:
    a.    Counsel failed to submit evidence of Petitioner's intoxication at the time of the crime.
    b.    Counsel failed to convey details of State's offer for plea deal.
    c.    Counsel failed to challenge the prosecution's case.

Ground 2: Whether the trial court erred in its evidentiary ruling regarding Petitioner's previous accusations that another individual had molested his daughter.

After an initial review, the Court ordered Respondent to file a response to the petition along with the record in the State courts [Doc. 4]. On June 9, 2020, Respondent filed the State-court record

[Doc. 6]. Respondent filed his response on August 4, 2021 [Doc. 10], and Petitioner filed his reply on September 7, 2021 [Doc. 11]. This matter is now ripe for review.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro*, 550 U.S. at 473.

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *Williams,* 529 U.S. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. Thus, a petitioner is entitled to relief on a federal claim decided on its merits in State court only where he demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the

6

evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In addition to the stringent standard for succeeding on the merits of a claim, the grant of habeas relief is further restrained by the requirement of exhaustion and the doctrine of procedural default. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman*, 501 U.S. at 731-32, 735 n.1; *Gray*, 518 U.S. at 161-62; *see also Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

The exhaustion requirement, codified at 28 U.S.C. §2254(b)(1), requires a petitioner to "fairly present," each federal claim to all levels of the state appellate system, meaning he presented the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). In Tennessee, presentation of a federal claim to the TCCA is sufficient to deem the claim exhausted under State law. *See* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies); *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (recognizing Tennessee's rule removing Tennessee Supreme Court as "antecedent for habeas purposes").

Additionally, Tennessee petitioners may generally proceed only through one full round of the post-conviction process, and there is a one-year statute of limitation on such actions. Tenn.

7

Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule). Therefore, if a petitioner fails to present a claim in a first petition filed within the applicable deadline period, the petitioner is typically prevented from returning to State court to litigate any additional constitutional claims. In such circumstances, the claim is considered technically exhausted but procedurally defaulted. *Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.")

A procedural default may be circumvented, allowing federal habeas review of the claim, where the prisoner can show cause for the default and actual resulting prejudice, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that trial counsel rendered ineffective assistance. *Coleman*, 501 U.S. at 753-54. The prejudice demonstrated to overcome the default must be actual, that is, the error must have "worked to [Petitioner's] *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Such a claim requires a "petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In this context, actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. at 687.[2] Conclusory allegations of wrongdoing by counsel "are insufficient to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) (citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)). Rather, deficiency is established only when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. *Strickland*, 466 U.S. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

---

[2] In his unsigned reply brief, Petitioner argues *Cronic v. United States*, 466 U.S. 648 (1984) is a more apt legal standard in this case [Doc. 11 p. 7-8]. Because this brief is unsigned, the Court need not consider it. E.D. Tenn. L.R. 83.13; *see also* Fed. R. Civ. P. 11. Moreover, in *Cronic*, a case decided the same day as *Strickland*, the Supreme Court held that prejudice should be presumed where (1) there is a complete denial of counsel during a critical stage of trial; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) the circumstances surrounding the trial made it so unlikely that any lawyer could provide effective assistance. *See id*. at 659-60. The Court finds the record plainly demonstrates that trial counsel actively defended Petitioner, and the trial court discounted Petitioner's post-conviction claims that trial counsel seemed impaired and/or inattentive during trial [*See* Doc. 6-22 p. 63]. Thus, the Court finds that the test of *Strickland*, rather than the presumption of prejudice in *Cronic*, is the appropriate lens through which to view Petitioner's claims of ineffective assistance.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

While the ineffective assistance of trial counsel can serve as "cause" for a defaulted claim, errors of post-conviction counsel cannot generally serve as "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 752-53. An equitable exception to this rule was established in *Martinez v. Ryan*, which held that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The Supreme Court has described the *Martinez* exception as containing the following requirements:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 13-14, 16-17). Other attorney errors, including errors of appellate counsel and errors on post-conviction appeal, do not allow a petitioner to assert *Martinez* as an exception to the doctrine of procedural default. *Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017); *Martinez*, 566 U.S. at 16.

In determining whether an ineffective assistance of trial counsel claim is substantial, the Court asks whether it "has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). Conversely, "a

10

claim is insubstantial when 'it does not have any merit'" or "'is wholly without factual support.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15-16).

### 1. Evidence of Intoxication

Petitioner first claims that trial counsel was ineffective in failing to admit Petitioner's bank statements and records of his prescriptions to demonstrate Petitioner's intoxication at the time of the homicide [Doc. 5 p. 28]. This issue was raised on post-conviction appeal, where the TCCA denied relief. *Hudgins II*, 2020 WL 7589670, at *8.

At trial, a Knoxville Police Department patrolman who responded to the telephone call Petitioner's mother made from Kroger, testified that Petitioner appeared drunk "out of his mind" when he spoke to him shortly after 9:00 p.m. on the night of the shooting [Doc. 6-5 p. 30, 37, 39]. Petitioner also detailed at trial the amount of alcohol he consumed on the day of the shooting [Doc. 6-6 p. 19, 86]. Further, a copy of Petitioner's receipt from Applebee's was introduced that showed Petitioner had ordered six double shots of vodka by 1:18 p.m. of the day of the shooting [Doc. 6-3 p. 66].

At the post-conviction hearing, Petitioner stated that his bank records from the day of the shooting would have shown that he additionally spent almost another $100 on alcohol at two different bars on the day of the shooting [Doc. 6-22 p. 27]. However, those records were never admitted into evidence at the post-conviction hearing [*See, generally*, Doc. 6-22]. Additionally, Petitioner detailed his daily prescribed dosage of opiate painkillers, but documentation of his prescriptions for the drugs was never admitted during Petitioner's post-conviction proceedings [*Id.*]. Because the bank records and prescriptions were not part of the State-court record, the TCCA determined that Petitioner failed to show that trial counsel was deficient for failing to present the evidence at trial. *Hudgins II*, 2020 WL 7589670, at *8.

11

Petitioner attached his bank records and prescriptions to his federal habeas corpus petition [Doc. 5 p. 12-21, 23-25]. However, this Court's review of claims adjudicated on their merits "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Accordingly, this Court's review under § 2254(d)(1) does not take those records into account. The Court finds that it was reasonable for the TCCA to refuse to speculate about the contents of Petitioner's bank records and prescriptions, and therefore, to conclude that Petitioner failed to show the deficiency of counsel in failing to produce those records.

Even if the Court could consider the evidence now presented by Petitioner, however, the Court finds that they would not establish that counsel performed deficiently. First, the bank records would not have proved that the purchases made at the two downtown bars were solely alcohol purchases, or even if they were, that Petitioner consumed all of the alcohol alone. Moreover, the prescription records do not show that Petitioner had filled prescriptions for opiates at or near the time of the shooting, as the records only show the medications filled through 2011, and the shooting occurred on October 16, 2013 [Doc. 5 p. 12-21].

Regardless, the jury heard evidence of Petitioner's mental state through various witnesses. Petitioner's son testified at trial that Petitioner was not drunk at the time of the shooting [Doc. 6-2 p. 82, 85]. Swaggerty and Petitioner's daughter observed Petitioner behaving as though he was drunk a few hours before the shooting [Doc. 6-3 p. 90-95; Doc. 6-4 p. 41]. The patrolman who saw Petitioner at Kroger at approximately 9:00 p.m. observed that Petitioner was drunk "out of his mind" [Doc. 6-5 p. 29-30, 39]. Another witness testified that Petitioner was "smashed" when he spoke to Petitioner by phone on the evening of the shooting [Doc. 6-5 p. 93]. Even so, multiple witnesses testified that Petitioner stated on the day of the shooting that he intended to kill the victim [Doc. 6-2 p. 50-51, 95; Doc. 6-4 p. 44; Doc. 6-6 p. 66]. Therefore, in light of the other evidence

presented regarding both Petitioner's intent to kill the victim and Petitioner's alcohol consumption, Petitioner has failed to demonstrate that trial counsel's failure to admit additional records of his intoxication at trial prejudiced him.

### 2. Plea Deal

Petitioner next claims that trial counsel rendered ineffective assistance for failing to convey a plea deal to Petitioner [Doc. 5 p. 7-8]. At his post-conviction hearing, Petitioner testified that trial counsel told him that the State had offered a plea, but that counsel would not let him take it because he could "get [Petitioner] that [time] at trial" [Doc. 6-22 p. 32]. As previously noted, trial counsel was not available to testify at Petitioner's post-judgment proceedings.

Petitioner did not present his claim of ineffective assistance pertaining to a plea offer to the TCCA on appeal [*See, generally,* Doc. 6-23], and there is no avenue by which Petitioner may now exhaust this claim in State court. Accordingly, this claim is technically exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion[.]"); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Petitioner concedes that he defaulted this claim on post-conviction appeal but argues that the ineffective assistance of post-conviction counsel constitutes "cause" for the default under the holding of *Martinez* [Doc. 5 p. 2]. However, *Martinez* is inapplicable when a claim was raised in initial post-conviction proceedings but abandoned on appeal.[3] *See, e.g., West v. Carpenter*, 790

---

[3] Petitioner did attempt to raise this claim in his Rule 11 application for permission to appeal to the Tennessee Supreme Court [Doc. 6-27 p. 7]. However, by bypassing the TCCA and raising the claim "in a procedural context in which its merits will not be considered unless there are special and important reasons therefor," Petitioner failed to meet the requirement of "fair presentation" to the State courts. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

13

F.3d 693, 698-99 (6th Cir. 2013) ("[A]ttorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework.").

Regardless, the Court finds that Petitioner cannot establish that his ineffective assistance claim is substantial. Courts apply a *Strickland* analysis to a claim alleging counsel performed ineffectively in advising about a plea offer. *See Lafler v. Cooper*, 566 U.S. 156 (2012). Prejudice in this context turns on whether there is a reasonable probability the offer would have been accepted if counsel had performed effectively. *Id*. at 164. To answer that question affirmatively, Petitioner must establish:

> [T]hat but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*.

Petitioner bears the burden of proving his factual allegations, and this Court must defer to the State court's findings. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (finding reviewing court "is not as well positioned as the trial court is to make credibility determinations"). Here, the trial court expressly found that Petitioner offered no credible proof of a plea offer [Doc. 6-22 p. 66-67]. Therefore, the Court finds that this conclusory argument is not only procedurally defaulted but also unsupported and is thus insufficient to make out a substantial claim of ineffective assistance of trial counsel. *See Wogenstahl*, 668 F.3d at 335.

### 3. Challenge to State's Case

Third, Petitioner claims that trial counsel performed ineffectively by failing to challenge the State's case [Doc. 1 p. 9; Doc. 5 p. 8-9]. Specifically, he notes that the victim was shot five times while only four .40 caliber casings were found; there was no explanation for why the victim

14

had a spent .380 caliber shell casing on him a week after he was allegedly hunting; the State asserted that Petitioner used "hollow point bullets" while Petitioner used "controlled expansion bullets"; and the Applebee's server was not challenged regarding her testimony that Petitioner "did not appear to be drunk" earlier the day of the crime [Doc. 5 p. 8].

While Petitioner partially presented this claim in his initial post-conviction proceedings [Doc. 6-21 p. 5], he did not present it to the TCCA for review on appeal [Doc. 6-23]. No avenue now remains to present this claim; therefore, it is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 732; *see also* Tenn. Code Ann. § 40-30-102(a) and § 40-30-102(c). To the extent Petitioner relies on *Martinez* to excuse his default, the Court again notes that the *Martinez* exception is inapplicable when a claim was raised in initial post-conviction proceedings but abandoned on appeal. *See, e.g., West*, 790 F.3d at 698-99.[4]

Moreover, the Court finds this claim is not substantial. Petitioner testified at trial that he presumably shot the victim with hollow-point bullets because "that's the kind he buys" [Doc. 6-6 p. 88]. Therefore, Petitioner had the opportunity to clarify that the bullets were more accurately described as "controlled expansion" bullets and failed to do so; he cannot blame trial counsel for not contradicting Petitioner's own testimony. Additionally, defense counsel cross-examined the Applebee's bartender who served Petitioner on the day of the shooting with questions intended to cast doubt on her assertion that Petitioner was not drunk when he left the restaurant [Doc. 6-7 p. 43-46]. Further, Petitioner admitted that he shot the victim numerous times with a .40 caliber pistol [Doc. 6-6 p. 25, 98-99]. The fact that one bullet casing was not found, whether the designation of the bullet type was semantically accurate, etc., has no real bearing on whether

---

[4] Petitioner raised this claim in his Rule 11 application for permission to appeal to the Tennessee Supreme Court [Doc. 6-27 p. 7-10]. However, as the Court noted in fn. 3, raising the claim in such a manner does not meet the requirement of "fair presentation." *Olson*, 604 F. App'x at 402 (citation omitted).

Petitioner was guilty of the offense charged. Accordingly, this claim is insubstantial and procedurally defaulted.

## B. Evidentiary Ruling

In his final claim for relief, Petitioner argues that the trial court erred in allowing testimony that Petitioner had previously accused another individual of molesting his daughter [Doc. 5 p. 33-34]. This issue was raised on direct appeal, where the TCCA determined that that Petitioner had waived review of the issue by failing to object when the allegation was raised on Petitioner's cross-examination. *Hudgins I*, 2016 WL 4413281, at *11-12.[5]

Petitioner's federal habeas claim involves an evidentiary ruling raised under State law on appeal [*Compare* Doc. 5 p. 10 with Doc. 6-14 p. 25-26]. Federal habeas relief does not lie for errors of State law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus."). Rather, it is only where the evidentiary ruling by itself "render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment" that habeas relief is warranted. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70)). This Circuit has acknowledged that the Supreme Court has not held that a state violates due process by

---

[5] The Court notes that the waiver rule articulated in Tennessee Rule of Appellate Procedure 36(a) and relied upon by the TCCA otherwise constitutes a firmly established and regularly-enforced independent rule that precludes review of this claim. *See Hugueley v. Westbrooks*, No. 09-1181-JDB-EGB, 2017 WL 3325008, at *23 (W.D. Tenn. Aug. 3, 2017); *see also State v. Willis*, 496 S.W.3d 653, 755 (Tenn. 2016) (waiving challenge to prosecutorial comments where defendant failed to object at trial); *State v. Armstrong*, 256 S.W.3d 243, 249 (Tenn. 2008) (noting failure to contemporaneously object to prosecutor's comments waives challenge).

permitting evidence of other acts, but rather, has found such matters more appropriately addressed in procedural and/or evidentiary codes. *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003) (citations omitted). Here, Petitioner was cross-examined about the prior accusation, and after he denied making such an accusation, a witness was called to impeach his testimony. *Hudgins I*, 2016 WL 4413281, at *11. This impeachment testimony was proper under Tennessee's evidentiary rules. *Id.* at *12. *See* Tenn. R. Evid. 613 (permitting introduction of extrinsic evidence of prior inconsistent statement by witness after witness has been given opportunity to explain or deny statement).

Additionally, Petitioner did not present the TCCA with an allegation that he was denied a fair trial based on the evidentiary rulings of the trial court, and therefore, he did not fairly present this issue to the State courts as a federal constitutional claim. *See, e.g., McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court."); *see also Baldwin v. Reese*, 541 U.S. 27, 31 (2004) (finding prisoner does not ordinarily meet requirement of fair presentation if court must read beyond petition or brief to find federal claim). There is now no avenue through which Petitioner may present this issue to the State court as a constitutional claim, and therefore, it is procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) and § 40-30-102(c). Accordingly, this claim is non-cognizable, without merit, and otherwise procedurally defaulted.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue

17

unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

V. **CONCLUSION**

For the reasons set forth above, the instant petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**. Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24. A separate judgment order shall enter.

SO ORDERED.

/s/ *Charles E. Atchley Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**